UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICKY JACKO ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No: 06-1189 (RWR) |
| ) | |
| LARRY BARNES, POSTMASTER ) | |
| ) | |
| Defendant. ) | |
| ) | |

DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(3), 12(b)(6) or 56(b) of the Federal Rules of Civil Procedure, Defendant, through counsel, respectfully moves this Court to dismiss Plaintiff's complaint or in the alternative, to grant summary judgment. Defendant also requests that the Court dismiss the case for lack of venue or, in the alternative, to transfer the case to the proper jurisdiction. In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

August 31, 2006                    Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICKY JACKO | ) |
| | ) |
|       Plaintiff, | ) |
| v. | )   Case No: 06-1189 (RWR) |
| | ) |
| LARRY BARNES, POSTMASTER | ) |
| | ) |
|       Defendant. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The Defendant, Larry Barnes, Postmaster of the United States Postal Service ("Defendant" or "USPS") et al., through counsel, hereby moves this Court to dismiss the instant complaint, or in the alternative, to grant summary judgment in favor of the Defendant. Defendant also moves the Court to dismiss the case for lack of venue or, in the alternative, to transfer the case to a proper jurisdiction. At issue in this case is whether the Defendant: a) discriminated against the *pro se* Plaintiff by denying his reinstatement due to his alleged disability; b) retaliated against him for his protected EEO activity; and c) breached their Settlement Agreement. Plaintiff seeks reinstatement to any of three locations, San Mateo, California, South Carolina or Eagan, Minnesota. Compl. at 2, 5. Because the alleged discriminatory actions occurred in California and any records pertaining to the allegations are located in California, venue in the District of Columbia is improper.

## INTRODUCTION

Pro se Plaintiff provides no explicit legal basis for his "employment discrimination" complaint. Complaint Caption. However, Plaintiff has exhausted his administrative remedies for the issues in his underlying Equal Employment Opportunity ("EEO") complaint. See EEO Decision attached to the Complaint. Therefore, Defendant respectfully addresses those exhausted issues with the belief that Plaintiff most likely seeks to address them in this complaint. In his June 23, 2004 EEO complaint, Plaintiff alleged that he was discriminated against on the basis of his hearing loss and Post Traumatic Stress Disorder ("PTSD") and in reprisal for protected activity when Defendant on April 16, 2004 denied his request for reinstatement in alleged violation of the November 1990 Merit System Protection Board ("MSPB") settlement agreement. Id. at 1.

## BACKGROUND

Plaintiff was assigned to the Pleasanton California Post Office District 94566 as a postal carrier in 1985 to1987, when he resigned in accordance with a November 1990 settlement agreement reached during an appeal before the MSPB. Compl. at 2; Settlement Order attached to the Complaint. At the time of Plaintiff's resignation, he was facing removal for soliciting money from customers. Plaintiff admits that he "borrowed some money from [his] customers" after he had been suspended from his job in the 1980s at Pleasanton California. Compl. at 2. The USPS Notification of Personnel Action, dated 8/13/87 and attached to the Complaint, states "[r]esignation charges pending to separate employee for unacceptable conduct." In the MSPB case, Plaintiff appealed the Defendant's decision to remove him.

The terms of the settlement agreement, as memorialized by the Settlement Order attached

to the Complaint, were as follows: a) the Postal Service agreed to accept and consider Plaintiff's application and process it in accordance with § 873 of the Employment and Labor Relations Manual ("ELM") and provision of Handbook EL-311; b) the Postal Service agreed to provide Plaintiff with a copy of the cited provisions; c) the Plaintiff agreed to withdraw his petition before the MSPB; and d) the agreement resolved the matters raised by the Plaintiff in his complaint.  Settlement Order attached to the Complaint.

On April 16, 2004, the Defendant denied Plaintiff's request for reinstatement at the Big Valley, California postal facility.  EEO Decision at 1.  Defendant denied such reinstatement based upon Plaintiff's unemployment history for the past two years and his employment record with the Pleasanton Post Office as contained in his Personnel File.  See Id. at 2.  On June 23, 2004, Plaintiff filed a complaint with the EEOC.

## ARGUMENT

I.     Legal Standard for Deciding 12(b)(3) Motions

Federal Rule of Civil Procedure 12(b)(3) states that the court will dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum.  Fed. R. Civ. P.12(b)(3).  In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor. Darby v. U.S. Dept. of Energy, 231 F. Supp.2d 274, 277 (D.D.C. 2002); 2215 Fifth St. Assocs. v. Uhaul Int'l, Inc., 148 F. Supp.2d 50, 54 (D.D.C. 2001). The court, however, need not accept the plaintiff's legal conclusions as true.  2215 Fifth St. Assocs., 148 F. Supp.2d at 54.   To prevail on

a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue. Id.

II.     Legal Standard for Venue in Rehabilitation Act Cases

The remedial and procedural provisions of Title VII are incorporated in the Rehabilitation Act. 29 U.S.C.§ 794 (a). Venue for claims under the Rehabilitation Act is therefore governed by 42 U.S.C. 2000e-5(f)(3). Robinson v. Potter, No. Civ. A 04-0890, 2005 WL 1151429, *2 (D.D.C. May 16, 2005); Archuleta v. Sullivan, 725 F. Supp. 602, 603-04 (D.D.C. 1989); Scolion v. Thomas, 603 F. Supp. 66, 67 (D.D.C. 1984); see also Benton v. England, 222 F. Supp.2d 728, 731 (D.Md. 2002); Lengacher v. Reno, 75 F. Supp.2d 515, 517 (E.D.Va. 1999). Under 42 U.S.C. § 2000e-5(f)(3), a plaintiff may bring a Title VII action in any one of four judicial districts. The statute provides that:

> [s]uch an action may be brought in [1] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). This statutory scheme indicates that Congress intended to limit venue in Title VII cases to those jurisdictions concerned with the alleged discrimination. Stebbins v. State Farm Mut. Auto. Ins. Co., 413 F.2d 1100 (D.C. Cir. 1969) ("Stebbins I").

If the plaintiff brings suit in a jurisdiction that does not satisfy one of the venue requirements listed in 42 U.S.C. § 2000e-5(f)(3), venue is improper. 42 U.S.C. § 2000e-5(f)(3). Washington v. Gen. Elec. Corp., 686 F. Supp. 361, 363 (D.D.C. 1988). When a plaintiff files an

action in the wrong district, 28 U.S.C. § 1406(a) directs courts to "dismiss, or if it be in the interest of justice, transfer such case" to the proper venue.  28 U.S.C. § 1406(a).

Courts can determine venue by applying a "commonsense appraisal" of events having operative significance.  <u>Robinson,</u> 2005 WL 1151429 at *3 *quoting* <u>Lamont v. Haig</u>, 590 F.2d 1124, 1134 (D.C. Cir. 1978); <u>see also</u> <u>Donnell v. Nat'l Guard Bureau</u>, 568 F. Supp. 93, 94 (D.D.C. 1983).  Specifically, venue cannot lie in the District of Columbia when "a substantial part, if not all, of the employment practices challenged in this action" took place outside the District even when actions taken in the District "may have had an impact on the plaintiff's situation." <u>Donnell</u>, 568 F. Supp. at 94.

III.    <u>Venue in the District of Columbia is Improper</u>

In order for the Plaintiff to establish venue, the plaintiff must allege one of the following for proper venue: (1) the unlawful employment practice occurred in the District of Columbia; (2) the employment records relevant to the unlawful employment practice are maintained in the District of Columbia; or (3) the plaintiff would have worked in the District of Columbia but for the unlawful employment practice.  42 U.S.C. 2000e-5(f)(3); <u>Robinson</u>, 2005 WL 1151429 at *4 (D.D.C. May 16, 2005).  However, Plaintiff alleges none of the above.  In fact, in regards to prong one, any alleged unlawful conduct would have had to occur in California, either where Plaintiff worked or applied for reinstatement.  Compl. at 2 and Decision of EEOC Commission (attached to the Complaint) at 1.  As for prong two, because the alleged discrimination occurred in California, it follows that any records regarding the alleged unlawful employment practices would be in California.  Finally, for prong three, but for the alleged unlawful employment practices, Plaintiff would have worked in California.  Therefore, the Court should determine that

venue in the District of Columbia is improper and dismiss the case. In the alternative, the Court could transfer the case to the United States District Court of the Northern District of California, which is the jurisdiction for 1) Pleasanton, California, where Plaintiff worked previously for the Defendant and 2) Big Valley, California, where Plaintiff applied for reinstatement. See Compl. at 2 and Decision of EEOC Commission (attached to the Complaint) at 1.

IV.     Legal Standard for Deciding 12(b)(6) Motions

In resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court will treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor. Sullivan-Obst v. Powell, Secretary, Department of State, 300 F. Supp. 2d 85, 91 (D.D.C. 2004). Therefore, the complaint will be dismissed if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id. Finally, while "many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." Id.

V.      Legal Standard for Deciding 56 Motions

In the alternative, summary judgment pursuant to Fed. R. Civ. P. 56 is proper when the pleadings, depositions, answers to interrogatories, and admissions together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must consider whether the nonmoving party failed to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Sullivan-Obst, 300 F. Supp. 2d at 90. The nonmoving party must present specific facts that would enable a reasonable jury to find in its

favor; thus, by pointing to an absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. Id. Also, while the court must accept the nonmoving party's evidence as true, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id. Therefore, an employer can obtain summary judgment in one of two ways: It can demonstrate that the plaintiff's evidence fails to establish a prima facie case or it can present a legitimate, nondiscriminatory reason about which the plaintiff does not create a valid factual dispute. Mitchell v. Data Gen. Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993).

VI.     McDonnell-Douglas:  Allocation of Burdens of Production and Persuasion

The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973), governs the analysis of Plaintiff's discrimination and retaliation claims. Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000); see also Duncan v. Washington Metropolitan Area Transit Authority, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (employing McDonnell-Douglas test for ADA claim). Under this test, the plaintiff has the initial burden of proving by a preponderance of the evidence a "*prima facie*" case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to produce credible evidence that its actions were taken for a legitimate, nondiscriminatory reason. Id. If the defendant meets this burden of production, the burden shifts back to the plaintiff to present evidence that the stated reason was pretextual. Id. To do so, the plaintiff must show "both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993); see also Fischbach, supra, 86 F.3d at 1183 ("It is not enough for the plaintiff to show that

the reason given for a job action is not just, fair, or sensible. He must show that the explanation given is a phony reason.") (internal quotation omitted). At all times, the plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination. Burdine, supra, 450 U.S. at 252-53.

VII.    Plaintiff Does Not State a Claim for Disability Discrimination

The Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq., prohibits discrimination against qualified handicapped employees and job applicants. In order to make out a *prima facie* case of disability discrimination, a Rehabilitation Act plaintiff must show that he: (1) had a disability within the meaning of the Act; (2) was "qualified" for the position with or without a reasonable accommodation; and (3) suffered an adverse employment action because of his disability. Duncan, supra, 240 F.3d at 1114. In a non-selection case a plaintiff must show that he was rejected for the position under circumstances giving rise to an inference of discrimination. See Stella v. Mineta, 284 F.3d 135, 144-45 (D.C. Cir. 2002) (citing McDonnell Douglas, 411 U.S. at 802); Harding v. Gray, 9 F.3d 150, 152 (D.C. Cir. 1993). Plaintiff cannot make out a *prima facie* case, because he has not alleged a disability within the meaning of the Act.

    1.    Plaintiff Is Not "An Individual With A Disability"

In pertinent part, the Rehabilitation Act defines an "individual with a disability" as a person who has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 705(20)(B). As explained by the U.S. Supreme Court in Bragdon v. Abbott, ascertaining whether an individual meets this definition requires a three-step analysis. 118 S. Ct. 2196, 2202 (1998). First, the court must determine whether the

8

individual's condition constituted a physical or mental impairment.  Id.  Second, the court must "identify the life activity on which [the plaintiff] relies" and determine whether it constitutes a major life activity.  Id.  And third, the court must determine whether the physical or mental impairment "substantially limited" the major life activity in question.  Id.  As the Court emphasized in the recent case of Toyota v. Williams, "merely having an impairment does not make [an individual] disabled."  122 S.Ct. 681, 690 (2002).  Instead, a plaintiff must "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial.'"  Id. at 691-692.  To qualify as "substantial," "the impairment's impact must also be permanent or long-term."  Id. at 691; compare Paegle v. Dep't of the Interior, 813 F. Supp. 61, 64 (D.D.C. 1993), aff'd, 24 F.3d 1464 (D.C. Cir. 1994) ("The [Rehabilitation] Act identifies a handicap as a severe disability of a permanent nature").  In sum, the terms of the disability definition must be "interpreted strictly to create *a demanding standard for qualifying as disabled*."  Toyota, supra, 122 S.Ct. at 691 (emphasis added).  Here, Plaintiff merely states in the Complaint that he has Post Traumatic Stress Disorder ("PTSD")[1], he does not allege a substantial limitation on any major life activity.  Therefore, Plaintiff has not alleged the standard for a qualified disabled person.

VIII.   Defendant had legitimate, nondiscriminatory reasons for not reinstating Plaintiff

Even assuming, *arguendo*, that Plaintiff could make out a *prima facie* case of disparate-treatment discrimination, Defendant had legitimate, nondiscriminatory reasons for not reinstating him at the Big Valley, California postal facility.  Defendant denied reinstatement for Plaintiff

---

[1] Plaintiff does not mention a hearing loss in the Complaint as he did in his EEO complaint.  See Compl. and EEO Decision.

based on 1) his unemployment for the past two years and 2) his employment history at the Pleasanton Post Office, from April 1985 to August 1987, as contained in his Official Personnel File.  See EEOC Decision at 1-2, attached to the Complaint.  Plaintiff cannot show that any non-disabled employee with a similar history of unemployment and negative work conduct was treated more favorably than he.  Thus, Plaintiff clearly cannot show that Defendant's reasons for terminating him were pretextual.

IX.     Plaintiff's Retaliation Claim Must Fail

To establish a case of retaliation, a plaintiff must demonstrate that a reasonable employee would have found the challenged action materially adverse.  Burlington Northern and Santa Fe Ry. Co. v. White,126 S.Ct. 2405, 2415 (2006).  Here, the protected activity was the EEO claim that Plaintiff filed after he was denied reinstatement.  EEOC Decision at 2.  Because the denial of reinstatement occurred before the alleged protected activity, there exists no casual connecting between the two.  Therefore, Plaintiff has failed to establish a prima facie case of retaliation.

X.      Court Should Grant Summary Judgment on Breach of Settlement Claim

Plaintiff alleges a breach of the 1990 settlement agreement negotiated by Plaintiff and the agency representative.  Compl. at 3.  On November 9, 1990, an Administrative Law Judge issued an Order memorializing the terms of the settlement which resolved a complaint filed by Plaintiff with the Merit System Protection Board.  The Settlement Order is attached to the Complaint.  Because the settlement agreement is fully integrated, made in good faith, relied on by Defendant and represents the entire agreement between the parties, Plaintiff is not entitled to the remedies he seeks.  Specifically, Plaintiff is not entitled to a revision in his "SF 50".  Compl. at 5.  Plaintiff claims that the Settlement Order "included the correction of [his] SF 50" which Plaintiff notes

has an entree stating "Resignation charges Pending To Separate Employee for Unacceptable Conduct." Compl. at 3, 5; USPS Notification of Personnel Action attached to the Complaint. However, the Settlement Order contains no such agreement for a "correction" or modification. Settlement Order attached to the Complaint.

The District Court in the District of Columbia views a settlement agreement as a contract. Johnson v. Reno, 1996 U.S. Dist. LEXIS 5347 at 21 (D.D.C. 1996), *citing* Greco v. Department of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988). In order to determine if there has been a breach of a settlement agreement, the court applies principles of contract law to determine the intent of the parties. Where a plaintiff's claim turns on the construction of the settlement agreement, i.e., a contract – and the agreement is unambiguous and "admits of only one reasonable interpretation," the District Court may decide the matter on summary judgment. Saksenasingh v. Secretary of Education, 123 F.3d 347, 349 (D. C. Cir. 1997).

If a settlement agreement is a complete integration of the parties' understanding and there is no ambiguity in the meaning of its terms, the court must find that the parties are bound by the express terms of the agreement and may not introduce extrinsic evidence to contradict or modify its express terms. See Johnson v. Reno, supra, 1996 U.S. Dist. LEXIS 5347 at 21 (citing United States v. Sears, Roebuck and Co., 623 F. Supp. 7, 9 (D.D.C 1984), aff'd, 778 F.2d 810 (D.C. Cir 1985)); see also Federal Deposit Insurance Corporation v. Hadid, 947 F.2d 1153, 1156 (4th Cir. 1991) (quoting Williston, A Treatise on the Law of Contracts § 632A, at 985 (3d ed. 1961)) ("when a writing is complete on its face and is certain and definite as to the objects of the agreement, the writing is 'conclusively presumed' to be the entire contract between the parties, which cannot be contradicted or modified by parol or extrinsic evidence."); Bowden v. United

11

States, supra, 106 F.3d 433, 439-440 ("the ultimate determination of integration is a question of fact to be determined in accordance with all relevant evidence."). If a court finds that an agreement is only partially integrated, it may consider extrinsic evidence to explain an ambiguous term so long as the extrinsic evidence is consistent with the terms of the agreement and does not alter or modify the terms. Piedmont Resolution v. Johnston, 999 F. Supp. 34, 51 (D.D.C. 1998).

In Johnson, the District Court for the District of Columbia articulated the factors a court must consider in determining whether a contract is fully integrated. The first inquiry is whether the contract is a comprehensive document covering a broad variety of subjects. The second consideration is whether the agreement was reached with the assistance of experienced counsel and whether the negotiations were long and complicated. Finally, and most importantly, the court asks whether the agreement contains an integration clause that states that the agreement "constitutes the entire agreement between and among the parties with respect to the subject matter hereof and supersedes all prior agreements, written and oral, with respect thereto." Johnson v. Reno, supra, 1996 U.S. LEXIS 5347 at 21.

"In the face of a fully integrated agreement, the parole evidence rule generally precludes the consideration of extrinsic evidence." Id. An exception to this rule may exist if there is ambiguity in the language of the agreement. NRM Corp. v Hercules, Inc. 758 F.2d 676, 681 (D.C. Cir 1985). However, as stated earlier, extrinsic evidence may not alter the terms of the contract. A contract does not become ambiguous merely because the parties disagree on its interpretation. Id. It is ambiguous if it is reasonably susceptible of different constructions or interpretations. Lee v. Flintkote Co., 593 F.2d 1275, 1282 (D.C. Cir. 1979).

     a.     *<u>Settlement Agreement Is A Fully Integrated Contract</u>*

Using the factors elucidated by the court in <u>Johnson v. Reno</u>, the instant Settlement Agreement is a fully integrated contract. First, the agreement is a comprehensive document that covers a broad variety of subjects. The Settlement Order states that: a) the Postal Service agreed to accept and consider Plaintiff's application and process it in accordance with § 873 of the Employment and Labor Relations Manual ("ELM") and provision of Handbook EL-311; b) the Postal Service agreed to provide Plaintiff with a copy of the cited provisions; c) the Plaintiff agreed to withdraw his petition before the MSPB; and d) the agreement resolved the matters raised by the Plaintiff in his complaint. Settlement Order attached to Complaint. Second, the Settlement Order indicates that the agreement was made during a status conference and thus included the involvement of the supervisory Administrative Judge. Finally, the Settlement Order contains an integration clause in paragraph 2, which states the "[plaintiff] and the agency representative agree that the following is a complete statement of all the terms of their settlement agreement, reached freely and in good faith, in consideration of the mutual promises made below." Settlement Order attached to Complaint.

Accordingly, the Defendant submits that the Settlement Agreement is a fully integrated contract and that this Court should not look at parole evidence or extrinsic circumstances to determine the meaning of the agreement. Further, no exception to this rule is appropriate in the instant case because the language of the agreement is unambiguous. Accordingly, since the language of the integrated agreement is unambiguous regarding Settlement Order being "a complete statement of all the terms of their settlement agreement" the Court should not consider any extrinsic evidence. Settlement Order attached to the Complaint.

The Settlement Order does not memorialize an alleged agreement for modification to Plaintiff's SF 50. Plaintiff's claim that Defendant breached the settlement agreement because Defendant did not "correct" his SF 50 therefore fails. Thus, the Court should grant summary judgment in favor of the Defendant.

## CONCLUSION

Based upon the foregoing, Defendant respectfully requests that Plaintiff's complaint be dismissed with prejudice or in the alternative, summary judgment be granted in Defendant's favor. Defendant also requests that the Court dismiss the case for lack of venue or, in the alternative, transfer the case to the proper jurisdiction, the United States District Court for the Northern District of California.

August 31, 2006                           Respectfully submitted,


                                          _____/s/_____
                                          KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                          United States Attorney


                                          _____/s/_____
                                          RUDOLPH CONTRERAS, D.C. BAR # 434122
                                          Assistant United States Attorney.


                                          _____/s/_____
                                          ANDREA McBARNETTE, D.C. Bar # 483789
                                          Assistant United States Attorney
                                          555 Fourth Street, N.W.
                                          Washington, D.C. 20530
                                          (202) 514-7153

15

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion to Dismiss or, in the Alternative, for Summary Judgment has been served on this 31st day of August, 2006 on Pro Se Plaintiff, Ricky Jacko, via postage prepaid mail addressed as follows:

Ricky Jacko
160 Sinclair Street
Apt. #257
Reno, NV 89501

/S/
ANDREA McBARNETTE, D.C. Bar #483789
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153